UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DISEIYE IYEBOTE, M.D., | ) | |
| | ) | JURY DEMAND |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO: |
| | ) | |
| MEHARRY MEDICAL COLLEGE, | ) | Judge |
| | ) | |
| Defendant. | ) | Magistrate Judge |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I. NATURE OF THE CASE**

1. This is an action brought by Plaintiff, Diseiye Iyebote ("Iyebote"), by counsel, against Defendant, Meharry Medical College, ("Defendant"), pursuant to the Family and Medical Leave Act of 1993 ("FMLA"), as amended, 29 U.S.C. §2601 et seq. and Tennessee Human Rights Act.

**II. PARTIES**

2. Iyebote is a United States citizen and resident of Tennessee, who at all times relevant to this action, resided within the geographical boundaries of the Middle District of Tennessee.

3. Defendant maintains offices and conducts business within the geographical boundaries of the Middle District of Tennessee.

**III. JURISDICTION AND VENUE**

4. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. §1331; 28 U.S.C. §1343; 28 U.S.C. §1367; and 29 U.S.C. §2617(a)(2).

5. Iyebote's state law claims arise from the same common nucleus of operative facts as her federal law claims and all her claims form a single case and controversy under Article III of the United States Constitution.

6. Defendant is an "employer" as that term is defined by 29 U.S.C. §2611(4) and THRA.

7. Iyebote is a qualified individual as that term is defined by the THRA. At all relevant times, Defendant had knowledge of Iyebote's disability.

8. Iyebote was an "eligible employee" as that term is defined by 29 U.S.C. §2611(2) of the FMLA.

9. All events, transactions, and occurrences relevant to this lawsuit arose within the geographical environs of the Middle District of Tennessee, thus venue is proper in this Court.

### IV. FACTUAL ALLEGATIONS

10. Dr. Iyebote began her residency in the Department of Psychiatry and Behavioral Sciences at Meharry Medical College in or about July 2017.

11. The residency was a four-year program that was scheduled to conclude in July 2021.

12. The Psychiatry Program Chair was Dr. Lloyda B. Williamson.

13. Dr. Iyebote reported to Dr. Pasqual Ike, the Chief Resident Physician.

14. On or about April 20, 2018, Dr. Iyebote reported to Dr. Williamson that false sexual rumors were being spread about her in the workplace. Specifically, she informed Dr. Williamson that Dr. Osei, a Resident Physician, had told others that Dr. Iyebote was sexually involved with three internal medicine attendings, Dr. Oluha, Dr. Oso and Dr. Eouruso. Dr. Iyebote asked Dr. Williamson to take the matter to Human

Resources, but she refused to do so. Instead, Dr. Williamson emphatically instructed Dr. Iyebote to "drop it and move on." Dr. Iyebote did as instructed.

15. Dr. Iyebote was scheduled to start her two-month internal medicine rotation at the Veteran's Affairs Hospital. Realizing that she was going to be working with the Chief Resident and wife of one of the attending physicians and other individuals who were aware of the rumors, she requested to complete her rotation at Meharry's Nashville Internal Medicine Department. Her request was denied. She spent the next 4 weeks on internal medicine at the VA. Throughout she felt shamed and unwelcomed. Feeling helpless, hopeless, and depressed, she began isolating herself. She could no longer deal with the anxiety of going to work and completely shut down and stayed at home for the last 2 weeks of the rotation. Dr. Williamson was notified and proceeded to place her on probation from July 2018 until January 2019. Dr. Iyebote took ownership over her actions and she worked extremely hard during the next 6 months while on the most challenging and demanding rotation in the 4-year curriculum. Dr. Iyebote received stellar evaluations from every attending physician that she worked with during her rotation at Middle Tennessee Mental Health Institute (MTMHI).

16. On or about July 31, 2018, Dr. Williamson wrote Dr. Iyebote up for her pants being too tight and placed the write up in her permanent file as a violation of the dress code. During the encounter, Dr. Williamson attempted to coerce Dr. Iyebote to sign off on correspondence endorsing her stance. Dr. Iyebote respectfully declined because she was wearing professional dress pants. Dr. Williamson became enraged that she would not sign the document, grabbed her cell phone, and began taking pictures of Dr. Iyebote as she stood in her office in shame and humiliated. Dr. Williamson stated

that she was going to send the pictures of Dr. Iyebote to the Dean for a second opinion, she never did. When Dr. Iyebote followed up with Dr. Williamson the following week, Dr. Williamson stated, "It doesn't matter what anyone else thinks, I've written you up, it's on your permanent record and that's it".

17. In or about August 2018, during Dr Iyebote's rotation at MTMHI, she was approached by Dr. Paschal Ike, the Chief Resident Physician, who had somehow been made aware of all the details of the events that transpired on April 20th and July 31st. Dr. Ike mentioned that he was asked by Dr. Williamson if he thought the allegations were true because she believed the allegations to be true. He went on to reassure Dr. Iyebote that he "defended [her]" telling Dr. Williamson that he felt that the rumors were false.

18. Over the next four months, Dr. Iyebote spent every day working one-on-one with Dr. Ike at MTMHI. Working with him was extremely uncomfortable as he made inappropriate derogatory sexual comments daily, such as "Damn girl you look good", "I would wife you up, I don't need to date you." "Sexy ass" and lots more. Dr. Iyebote's colleagues, Dr. Robinson and Dr. McLaurin told Dr. Iyebote that Dr. Ike frequently spoke about her in a very sexually obsessive manner.

19. Dr. Iyebote did not feel comfortable reporting Dr. Ike to Dr. Williamson for several reasons. First, Dr, Ike was very close to Dr. Williamson and it seemed that she let him get away with anything he wanted. Second, Dr. Ike had promised Dr. Iyebote that he was advocating on her behalf to convince Dr. Williamson to take her off probation. Third, Dr. Williamson refused to forward Dr. Iyebote's previous sexual harassment complaint from April 20, 2018 for investigation. Finally, Dr. Iyebote felt

that because the incidents would just be her word against his, Dr. Williamson would never take her complaint seriously.

20. In or about October 23, 2018, Dr. Ike walked into Dr. Iyebote's office, grabbed her hand, and asked her to marry him. He was laughing during the entire ordeal. Then, he asked her if she found him attractive. Dr. Iyebote rejected his advances and told him that she needed to get her patient notes done and he left her office.

21. On or about October 26, 2018, Dr. Ike called Dr. Iyebote on her office extension and said he was "horny." Dr. Iyebote hung up the phone. Minutes later, he walked into her office and shut the door behind him. He pulled out his penis and said to Dr. Iyebote, "put this dick in your mouth." Dr. Iyebote was mortified. Dr. Iyebote demanded that he leave her office

22. On or about October 30, 2018, Dr. Iyebote met with Dr. Williamson and told her that she was being sexually harassed and noted that felt that it was caused in part by Dr. Williamson's failure to address Dr. Iyebote's complaint from April 20, 2018. Dr. Williamson got upset and defensive. Again, Dr. Williamson did not even bother asking her details about her complaint and instead began defending her actions/how she handle the sexual allegations in April.

23. Following her meeting with Dr, Williamson, Dr. Iyebote noticed a pattern of retaliation. For example, as subsequent monthly call schedules came out, she noticed that she was taking more holiday calls and more 24-hour calls than any other resident physician.

24. In or about November 2018, Dr. Iyebote registered for the USMLE Step 3, two-day examination scheduled for December 5th and 12th. In compliance with the psychiatry department policy, she forwarded her USMLE scheduling permit to Dr.

5

Williamson with the dates in order to obtain leave. Weeks after Dr. Williamson approved her leave, the call schedule for December was released and Dr. Iyebote was scheduled to take an overnight call on December 12, 2018, the same day as her exam. Dr. Iyebote expressed to the chief resident and Dr. Williamson the inconvenience this would create, and she was told that the schedule has been made and cannot be altered. Dr. Williamson asked Dr. Iyebote to arrange with another resident to cover for her from 4:30 p.m. to 7 p.m. but insisted that Dr. Iyebote return to work to take an overnight call shift after her 9-hour day long exam. No other resident has been denied leave and forced to take call on the day of their USMLE Step-3 exam.

25. Dr. Iyebote completed the psychiatry department leave form and did her due diligence in making sure that she secured adequate coverage. The request for leave was reviewed and signed by both chief residents, her rotation attending physician, the site director at the VA, and Dr. Williamson. Dr. Iyebote took it upon herself to secure coverage in her absence which was signed by Dr. Ralph Stewart after a verbal conversation with him detailing that she would be arriving at 7 p.m. and he would need to hold the pager from 4:30 until her arrival. Dr. Iyebote's exam on the 12th of December took place at Nashville Prometric center from 9 a.m. to 6 p.m. She arrived at the Murfreesboro VA at 7 p.m. to take call. When she arrived, she got sign out and completed the rest of her call without any issues.

26. On or about January 8, 2019, Dr. Williamson notified Dr. Iyebote that she was placing her on an additional 6 months of probation for reporting to call late on December 12, 2018. Dr. Iyebote reminded her that she made adequate arrangements considering the limited options that she was presented with; however, Dr. Williamson had already made up her mind and would not reconsider the discipline.

27. On or about December 13, 2018, Dr. Williamson required Dr. Iyebote to take a 24 hour consult call at the Nashville General Hospital after already serving 24-hour continuous hours at VAMC Murfreesboro hospital. No other resident was required to take call after serving a 24-hour continuous in-house shift and, the scheduling violated the ACGME regulatory guidelines.

28. On or about January 15, 2019, Dr. Iyebote reported to Dr. Akatue, Associate Dean of Medicine, her concerns regarding Dr. Williamson retaliating against her as well as the fact that she felt that she was being sexually harassed by a male colleague, who Dr. Iyebote believed felt empowered by Dr. Williamson's refusal to submit to human resources her original sexual harassment complaint. Dr. Akatue took no remedial action based on Dr. Iyebote's complaint.

29. On or about February 19th, 2019: Dr. Ike pulled Dr. Iyebote out of a conference for a meeting. He stated that he had questions about a paged consult that was staffed by a back-up resident Dr. Kwiatkowski while Dr. Iyebote was on sick leave. Dr. Iyebote was out sick and notified everyone in the department, which is the usual protocol. Dr. Ike said asked her if she would have taking the call while on sick leave. She said "yes, I would have responded and seen the patient if I was paged while out on a paid sick leave." Dr. Iyebote did whatever she was told by Dr. Williamson and Dr. Ike no matter how ridiculous the request was just to avoid any issues. After that meeting, he reported to Dr. Williamson that he asked her to make up the consult call and that she adamantly refused to do so, which was untrue.

30. On or about February 27, 2019, in response to Dr. Ike's false statement, Dr. Williamson scheduled a meeting with the Ombudsman in which she came in with a termination of contract letter. She explicitly stated that she was told by the Chief

7

Case 3:20-cv-00475    Document 1    Filed 06/05/20    Page 7 of 14 PageID #: 7

Resident Dr. Ike that Dr. Iyebote had refused to take an extra consult call after being asked to do so. According to her, this was a violation of Dr. Iyebote's probation, refusing orders from her chief resident. Dr. Iyebote explained to her that that it was a lie. Dr. Williamson opted not to go through with dismissing Dr. Iyebote but kept her on probation.

31.  On or about March 3, 2019, during a 24-hour overnight call, Dr. Ike showed up to Dr. Iyebote's call room at 10 p.m. in sweatpants and a sweatshirt. This was very unusual as he had no business at the Murfreesboro VA, an hour away from his home and Meharry, on a Sunday night. It was suspicious as he was not on the call schedule either. Dr. Iyebote was the only psychiatry resident on the schedule, and he was aware of that. He knocked, announced his name, and opened the call room door before Dr. Iyebote could get to the door. Dr. Iyebote was terrified for her safety. Having a 6'3 male who had bullied and sexually harassed her repeatedly, now intimidating her in an enclosed intimate call room space was threatening, so Dr. Iyebote called Dr. Parham on her cell phone for safety. Dr. Ike stated that he left something on the call room computer, took a seat next to Dr. Iyebote's bed and began browsing the web. Shortly after, Dr. Iyebote got paged and went to the ER, upon her return he had left her call room and was sitting in the call room next door that is connected to hers by a shared bathroom. The last Dr. Iyebote heard of him was at 2 a.m. in the morning when she got up to take another page from the ER. Upon return to her call room, Dr. Ike was gone, and Dr. Iyebote's laptop was missing.   Dr. Iyebote reported the incident to Dr. Williamson. She ignored Dr. Iyebote's concern and asked her to take up her issues with the ombudsman.

32. After this incident, Dr. Iyebote no longer felt safe at work. She fell into a deep depression with anxiety and severe PTSD. At her doctor's advice, she requested FMLA to get help for her condition.

33. On or about March 13, 2019, Dr. Iyebote submitted her FMLA request form to Human Resources which was forwarded to Dr. Williamson for review. The initial leave request was for continuous leave through April 1, 2019. Upon her return to word, she sought a reduced schedule under the FMLA and/or as an accommodation for her disability of 6-hour days, 5 day per week.

34. Initially, Dr. Iyebote's request was approved. Dr. Williamson emailed the staff disclosing Dr. Iyebote's leave and need to return on a part-time basis on April 2, 2019. The following day, Dr. Williamson pivoted and denied the accommodation for her disability and reduced schedule FMLA request.

35. On or about March 20, 2019, while on leave, Dr. Iyebote received a call from a colleague, Dr. Appleton, who notified her that the chief resident, Dr. Ike stated that "there are consequences for going to HR."

36. On or about April 2, 2019, Dr. Iyebote returned to work and was immediately placed on a 24-hour call, working full time despite having requested FMLA accommodations for a part time schedule. Dr. Iyebote was placed on three 24-hour call during the month of April 2019 and required to work 6 days per week, despite FMLA restrictions of 5 days per week and no more than 6 hours per day.

37. On or about April 3, 2019, Dr. Williamson wrote Dr. Iyebote up for allegedly being tardy. However, Dr. Iyebote arrived to work on time on April 2nd, her first day back from FMLA. Dr. Iyebote emailed Dr. Williamson because she thought it must be a mistake. Dr. Williamson never responded to her email. In a later

conversation, Dr. Williamson explained that she was advised by Dr. Ike that Dr. Iyebote was late to work three times in January.

38. On or about April 29, 2019, Dr. Williamson dismissed Dr. Iyebote from the program without disclosing any legitimate basis for the discharge. In making her decision, Dr. Williamson did not consult with Dr. Akatue, Director of Graduate Medical Education ("GME"), which is required per Meharry's GME Handbook.

39. On or about May 7, 2019, Dr. Iyebote appealed the decision to the GME office.

40. On or about May 13, 2019, Dr. Iyebote met with GME for an appeal hearing regarding dismissal. At the end of the hearing, she was told that they would reach out to her within two weeks.

41. On or about May 29, 2019, Dr. Iyebote followed up on the outcome of decision and forwarded her personal email address to GME Committee to forward the outcome of their decision. She never received a response from them.

42. On or about September 27, 2019, Dr. Iyebote reached out to GME again. She was informed that they had emailed a decision to her on May 28, 2019 to her Meharry email address though they acknowledged that they were aware that she did not have access to that account because she was fired.

43. GME decided to uphold Dr. Williamson's decision to dismiss her for causing "harm to a patient." Dr. Iyebote did not cause any harm to a patient. The GME did not meaningfully investigate the allegation and the other two physicians who participated in the treatment of the patient and would have been equally culpable in causing the alleged harm, were not disciplined.

44. Other female resident physicians, such as Dr. Taiwo, have been sexually harassed and retaliated against for refusing to submit to their male colleagues' advances. For reference, in March of 2019, Dr. Akatue was also involved in the firing of Dr. Taiwo, who had been sexually harassed by male supervising attending physician who had gone to her home several times to solicit sexual favors and later threatened to get her fired in a text message.

45. Dr. Iyebote has been traumatized by this experience and continues in therapy as a result.

46. Dr. Iyebote reached out to Mark Smith, Human Resources Director in September 2019. An investigation commenced in January 2020. In or about April 2020, the issue was escalated to the President of the University and Dr. Iyebote was told that Meharry was prioritizing her return to work date for May 1, 2020. Afterward Dr. Iyebote had weekly update meetings with Mark Smith, who consistently requested additional time due to delays caused by COVID-19 but reassured her that she would be returned to work.

47. Dr. Iyebote still has not been returned to work.

## V. LEGAL ALLEGATIONS

### COUNT I - DISABILITY DISCRIMINATION

48. Dr. Iyebote hereby incorporates paragraphs one (1) through forty-seven (47) of her Complaint.

49. Defendant violated Iyebote's rights by failing to accommodate her disabilities, by terminating her employment due to her disability and/or retaliating against her for her request and need for an accommodation.

50. Defendant's actions were intentional, willful and in reckless disregard of Iyebote's rights under the THRA.

51. Iyebote has suffered and continues to suffer harm because of Defendant's unlawful actions.

## COUNT II – VIOLATIONS OF THE FMLA - INTERFERENCE

52. Iyebote hereby incorporates paragraphs one (1) through fifty-two (52) of her Complaint.

53. Defendant interfered with Iyebote's rights under the FMLA by denying her request for leave under the FMLA and treating her use of leave as a negative factor in its employment decision making.

54. Defendant's actions were intentional, willful and in reckless disregard of Iyebote's rights as protected by the FMLA.

55. Iyebote suffered damages because of Defendant's unlawful actions.

## COUNT III – VIOLATIONS OF THE FMLA - RETALIATION

56. Iyebote hereby incorporates paragraphs one (1) through fifty-five (55) of her Complaint.

57. Defendant terminated Iyebote in retaliation for exercising her rights under the FMLA.

58. Defendant's actions were intentional, willful and in reckless disregard of Iyebote's rights as protected by the FMLA.

59. Iyebote suffered damages because of Defendant's unlawful actions.

## COUNT IV – SEXUAL HARASSMENT

60. Iyebote hereby incorporates paragraphs one (1) through fifty-nine (59) of her Complaint.

61. Iyebote was subjected to severe and pervasive harassment because of her sex.

62. Defendant's actions were intentional, willful and in reckless disregard of Iyebote's rights as protected by the THRA.

63. Iyebote suffered damages because of Defendant's unlawful actions.

## COUNT V – RETALIATION

64. Iyebote hereby incorporates paragraphs one (1) through sixty-three (63) of her Complaint.

65. Iyebote engaged in protected activity when she complained about harassment because of her sex as well as retaliation by Dr. Williamson and Dr. Ike.

66. Defendant retaliated against Iyebote by subjecting her to a hostile work environment and eventually terminating her employment.

67. Defendant's actions were intentional, willful and in reckless disregard of Iyebote's rights as protected by the THRA.

68. Iyebote suffered damages because of Defendant's unlawful actions.

## REQUESTED RELIEF

WHEREFORE, Plaintiff, Diseiye Iyebote, by counsel, respectfully requests that this Court find for Plaintiff and order Defendant to:

1. Reinstate Plaintiff to the position, salary, and seniority level she would have enjoyed but for Defendant's unlawful employment actions, or award her front pay in lieu thereof;

2. Pay to Plaintiff all her lost wages and benefits;

3. Pay to Plaintiff compensatory damages, damages for mental, physical, and emotional distress and payment of uncovered medical bills and/or insurance premiums;

4. Pay to Plaintiff liquidated damages for Defendant's willful violation of the FMLA and/or punitive damages;

5. Pay to Plaintiff pre- and post-judgment interest;

6. Pay Plaintiff's costs and attorney fees incurred in litigating this action; and,

7. Provide any further equitable relief this Court sees fit to grant.

Respectfully submitted,

*s/Kyle F. Biesecker*
Kyle F. Biesecker, Attorney No. 28872
BIESECKER DUTKANYCH & MACER, LLC
3200 West End Avenue, Suite 500
Nashville, Tennessee 37203
Telephone: (615) 783-2171
Facsimile: (812) 424-1005
E-Mail: kfb@bdlegal.com

*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

The Plaintiff, Diseiye Iyebote, by counsel, respectfully requests a jury trial as to all issues deemed so triable.

Respectfully submitted,

*s/Kyle F. Biesecker*
Kyle F. Biesecker, Attorney No. 28872
BIESECKER DUTKANYCH & MACER, LLC
3200 West End Avenue, Suite 500
Nashville, Tennessee 37203
Telephone: (615) 783-2171
Facsimile: (812) 424-1005
E-Mail: kfb@bdlegal.com

*Attorneys for Plaintiff*