UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DISEIYE IYEBOTE,<br><br>    Plaintiff,<br><br>v.<br><br>MEHARRY MEDICAL COLLEGE,<br><br>    Defendant. | Case No. 3:20-cv-00475<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

To:    The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

**REPORT AND RECOMMENDATION**

This action brought under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601–2654, and the Tennessee Human Rights Act (THRA), Tenn. Code Ann. §§ 4-21-101 *et seq.*, arises out of Defendant Meharry Medical College's termination of Plaintiff Diseiye Iyebote, M.D.'s employment in Meharry's psychiatric residency program. (Doc. No. 1.)

After the Court granted in part and denied in part Meharry's motion for summary judgment (Doc. No. 43), the parties agreed in mediation to settle Iyebote's remaining claims. Iyebote subsequently refused to sign the final settlement agreement. (Doc. No. 91.) Meharry filed a motion asking the Court to enforce the parties' mediated agreement and award Meharry attorney's fees associated with filing its motion. (Doc. No. 95.) Iyebote opposes Meharry's motion (Doc. No. 97), and Meharry filed a reply (Doc. No. 98).

For the reasons that follow, the Magistrate Judge will recommend that the Court grant Meharry's motion to enforce the parties' settlement agreement and deny without prejudice Meharry's request for attorney's fees.

I.      Relevant Background

   A.      Factual Background

The Court set out the facts underlying Iyebote's FMLA and THRA sexual harassment, retaliation, and disability claims in its memorandum opinion and order granting in part and denying in part Meharry's motion for summary judgment. (Doc. Nos. 42, 43.) This Report and Recommendation summarizes the facts relevant to Meharry's motion to enforce the parties' settlement agreement.

Iyebote was a second-year resident in Meharry's Department of Psychiatry and Behavior Sciences when she experienced sexual harassment by fellow resident Dr. Mina Ossei and Associate Chief Resident Dr. Paschal Ike. (Doc. No. 42.) In April 2018, Ossei "falsely spread rumors that Iyebote was sexually involved with three attending physicians in the Internal Medicine Department at the Veteran's Affairs Hospital[,]" which interfered with Iyebote's ability to complete a rotation in that department. (*Id.* at PageID# 927.) Between August 2018 and March 2019, Ike made "sexually inappropriate statements toward and about Iyebote"; "entered a room with her, closed the door, exposed his genitals, and suggested that she perform oral sex"; "touched her in a sexually inappropriate manner"; and "showed up unannounced" while Iyebote "worked an overnight hospital shift," "entered the resident call room when Iyebote was alone and stole her laptop." (*Id.*)

Iyebote complained about Ossei's and Ike's harassment to Meharry Psychiatry Department Chair Dr. Lloyda Williamson. (Doc. No. 42.) She also complained about Ike's harassment "to Dr. Richmond Akatue, Meharry's Associate Dean of Graduate Medical Education, fellow resident Dr. Karlos Parham, and to physician colleagues Dr. Appleton and Dr. Farhan Adam." (*Id.* at PageID# 928.) Williamson discouraged Iyebote from contacting Meharry's human resources department (HR) about the harassment, and Iyebote did not contact HR regarding Ossei or Ike.

(Doc. No. 42.) None of the doctors to whom Iyebote complained reported the harassment to HR, despite a Meharry policy requiring "any supervisory employee who learns about alleged sexual harassment to report it to [HR]." (*Id.* at PageID# 928.) After Iyebote complained to Williamson, "Williamson attempted to discipline and terminate Iyebote." (*Id.* at PageID# 929.)

Iyebote was diagnosed with depression, anxiety, and post-traumatic stress disorder in March 2019 and requested and received several weeks of FMLA leave from her residency program. (Doc. No. 42.) On Iyebote's first day back from FMLA leave, Williamson assigned Iyebote to a twenty-four-hour shift despite Iyebote's request for a reduced work schedule, disciplined Iyebote for tardiness that had occurred two months earlier, and emailed a Meharry official to complain about Iyebote's overall work performance. (*Id.*) Williamson terminated Iyebote's residency on April 29, 2019, at the end of Iyebote's second year of the four-year program. (*Id.*) Iyebote appealed the termination to the Meharry Graduate Medical Education Board, which upheld the termination but recommended that Iyebote be allowed to complete her internal medicine rotation. (*Id.*) Williamson rejected the Board's recommendation and terminated Iyebote's residency. (*Id.*)

### B. Procedural History

Iyebote initiated this action by filing a complaint against Meharry asserting claims of disability discrimination, sexual harassment, and retaliation under the THRA and claims of interference and retaliation under the FMLA. (Doc. No. 1.) Meharry moved for summary judgment. (Doc. No. 27.) The Court granted in part and denied in part Meharry's motion, entering summary judgment in Meharry's favor on Iyebote's THRA disability discrimination claim, but denying summary judgment on her remaining THRA sexual harassment and retaliation claims and FMLA interference and retaliation claims. (Doc. Nos. 42, 43.)

In accordance with the Court's orders, Iyebote and Meharry participated in a private mediation on May 9, 2022, with mediator Michael Russell. (Doc. Nos. 43, 48, 85.) That day, the parties signed a handwritten term sheet indicating their agreement to settle Iyebote's remaining THRA and FMLA claims and identifying four material terms of their agreement. The handwritten agreement, which is attached to Meharry's motion, records the following terms:

1. The parties have agreed to settle this case for [a redacted dollar amount] inclusive of attorneys fees and costs.

2. Plaintiff will sign a general release of claims and dismiss her pending lawsuit with prejudice.

3. Plaintiff will be reinstated for her PGY3[1] year in Colorado. During Plaintiff's PGY3 year, Defendant will cooperate with her in her efforts to transfer to another program for her PGY4 year. Counsel for Plaintiff and counsel for Defendant will work together in good faith to draft a mutually agreed upon letter of reference that will be attached to the final settlement agreement. Plaintiff will be listed as PGY4 at the end of her PGY3 year. Defendant will complete any form requested by a potential transferring institution in compliance with any attendance records of the Plaintiff.

4. The final settlement agreement will contain the following provisions:

    A. Confidentiality

    B. No admission of liability

    C. Non-disparagement, mutual with specific language to be finalized in the final agreement.

The agreement was signed by Iyebote and a representative of Meharry on May 9, 2022. (Doc. No. 96-1, PageID# 1150.)

Russell filed a mediation report on May 10, 2022, informing the Court that the parties had settled all of Iyebote's claims (Doc. No. 85), and the Court ordered the parties to file an agreed order of dismissal by May 31, 2022 (Doc. No. 86).

---

[1] The abbreviations "PGY3" and "PGY4" stand for "program year three" and "program year four." (Doc. No. 98.)

After twice moving to extend the deadline for filing a dismissal order, the parties notified the Court that "Iyebote [was] not going to enter into the proposed Settlement Agreement and Release" and wanted to proceed to trial; Meharry took "the position that the parties ha[d] reached an enforceable settlement agreement and" planned to file a motion asking the Court to enforce the agreement. (Doc. No. 91, PageID# 1131.) Iyebote stated in the notice that, "[i]n the weeks after the mediation, [she] learned that all of Meharry's educational programs are on probation and could potentially lose their accreditation altogether" and that this information "changes the agreement" because it "severely inhibits, if not eliminates, Iyebote's ability to transfer" to another residency program for her fourth program year. (*Id.* at PageID# 1133.)

Meharry filed a motion to enforce the parties' mediated settlement (Doc. No. 95), arguing that the signed term sheet establishes the parties' mutual assent to all material terms of the agreement and that there is no evidence that the agreement is invalid because of fraud, duress, or mutual mistake (Doc. No. 96). Meharry asks the Court to enforce the settlement, order Iyebote to sign a final settlement agreement, dismiss this action with prejudice, and award Meharry attorney's fees associated with filing its motion. (*Id.*)

Iyebote responds that Meharry had a duty to disclose its probationary accreditation status to her before the mediation and that Meharry fraudulently "concealed this fact, causing [her] to enter into a settlement agreement that was to her detriment" because the probationary status "inhibits, if not entirely eliminates, her ability to transfer institutions after her third year of residency with Meharry, which is a material term of the settlement." (Doc. No. 97, PageID# 1154–55.) In support of her argument, Iyebote filed a "Probationary Accreditation Status" update from Meharry stating that, "[o]n January 21st 2022, the Accreditation Council for Graduate Medical Education (ACGME) notified Meharry Medical College, School of Medicine that its role as

5

sponsor of our graduate medical education[ ] was being placed on probationary accreditation status effective Jan[uary] 18th." (Doc. No. 97-1, PageID# 1160.) Iyebote also argues that, while she "is currently working in [Meharry's] residency program in Colorado[,]" she "has been unable to participate in the [transfer] application process" because, despite promising to provide her "with all the required attendance records for transfer" as part of the settlement agreement, Meharry has not produced sufficient attendance records to establish which medical rotations Iyebote has completed. (Doc. No. 97, PageID# 1152 n.1, 1157).

Meharry replies that Iyebote's readmission to its "residency program in Colorado is conclusive evidence that the [p]arties reached an enforceable agreement." (Doc. No. 98, PageID# 1184.) Meharry also argues that Iyebote cannot show that Meharry fraudulently concealed its probationary accreditation status from her because Meharry publicized the probationary status on its website well before the mediation. (Doc. No. 98.) To support this assertion, Meharry filed a declaration from its director of communications and marketing stating that, "[o]n February 9, 2022, [he] placed a notification . . . on the web page for Meharry's residency programs" with a hyperlink to the probationary accreditation status update on which Iyebote relies, and that the notice and hyperlink "have been maintained on the web page . . . at all times since February 9, 2022." (*Id.* at PageID# 1191–92, ¶¶ 3, 8.) Meharry further argues that its probationary accreditation status was not material to the parties' settlement agreement because Iyebote's transfer to another program "is not within [Meharry's] power to grant" and Iyebote has not offered any support for her claim that "transfer would be 'nearly impossible—if not impossible' and that residents seeking transfer from institutions with probationary accreditation are 'viewed as deficient and are limited in their ability [to transfer].'" (*Id.* at PageID# 1187, 1188 (second alteration in original) (quoting Doc. No. 97, PageID# 1153, 1155).)

6

## II. Legal Standard

A district court has "broad, inherent authority and equitable power . . . to enforce an agreement in settlement of litigation pending before it[.]" *Bostick Foundry Co. v. Lindberg*, 797 F.2d 280, 282–83 (6th Cir. 1986). This power "'has its basis in the policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation . . . .'" *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000) (alteration in original) (quoting *Kukla v. Nat'l Distillers Prods. Co.*, 483 F.2d 619, 621 (6th Cir. 1973)). "Settlement agreements are a type of contract and are therefore governed by contract law." *Bamerilease Cap. Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992). Courts determine the validity of a contractual settlement agreement "'by reference to state substantive law governing contracts generally.'" *Id.* (quoting *White Farm Equip. Co. v. Kupcho*, 792 F.2d 526, 529 (5th Cir. 1986)).

"Before enforcing settlement, the district court must conclude that agreement has been reached on all material terms." *Therma-Scan, Inc.*, 217 F.3d at 419 (alteration omitted) (quoting *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988)); *see also RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 645–46 (6th Cir. 2001) (same). "Summary enforcement of a settlement agreement for which there is no dispute as to the terms of the agreement is the only appropriate judicial response, absent proof of fraud or duress." *RE/MAX Int'l, Inc.*, 271 F.3d at 650; *see also Henley v. Cuyahoga Cnty. Bd. of Mental Retardation & Developmental Disabilities*, 141 F. App'x 437, 443 (6th Cir. 2005) ("If the parties reached agreement on all material terms, then existing precedent 'dictates that only the existence of fraud or mutual mistake can justify reopening an otherwise valid settlement agreement.'" (quoting *Brown v. Cnty. of Genesee*, 872 F.2d 169, 174 (6th Cir. 1989))). The party challenging the settlement "bears the burden of showing that the settlement . . . was invalid because of fraud or a mutual mistake under which both parties acted[.]" *Nicklin v. Henderson*, 352 F.3d 1077, 1081 (6th Cir. 2003) (citing *Brown*, 872 F.2d at 174); *see*

7

*also Henley*, 141 F. App'x at 443 ("[O]nce a settlement is reached, it is the party challenging the settlement who bears the burden to show that the settlement contract was invalid based on fraud or mutual mistake.").

**III.     Analysis**

Iyebote does not argue that she and Meharry failed to reach agreement on all material terms of the settlement. *See Therma-Scan, Inc.*, 217 F.3d at 419; *RE/MAX Int'l, Inc.*, 271 F.3d at 645–46. Instead, she argues that the parties' settlement agreement is invalid because Meharry fraudulently concealed its probationary accreditation status from her. (Doc. No. 97.) She also argues that the agreement cannot be enforced because Meharry has failed to provide her with adequate attendance records as required by the terms of the settlement. (*Id.*) Neither argument is persuasive.

Iyebote bears the burden to show invalidity of the settlement agreement based on fraud. *Nicklin*, 352 F.3d at 1081; *Henley*, 141 F. App'x at 443. Under Tennessee law, "fraudulent concealment is committed when a party who has a duty to disclose a known fact or condition fails to do so, and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury." *Chrisman v. Hill Home Dev., Inc.*, 978 S.W.2d 535, 538–39 (Tenn. 1998); *see also Justice v. Anderson Cnty.*, 955 S.W.2d 613, 616 (Tenn. Ct. App. 1997) ("It is well-settled that fraud can be an intentional misrepresentation of a known, material fact or it can be the concealment or nondisclosure of a known fact when there is a duty to disclose."). The Tennessee Supreme Court has long held that fraudulent concealment requires the existence of a duty to disclose:

> The equitable doctrine of fraudulent concealment is based upon the principle of fair dealing. Where there is no dealing between the parties, there can be no concealment. And, even where the parties have had business transactions, it is universally held that mere silence does not constitute fraudulent concealment.
>
> . . .

> There must be a concealment, and the silence must amount to fraud. Concealment in this sense may consist in withholding information asked for, or in making use of some device to mislead, thus involving act and intention. *The term generally infers also that the person is in some way called upon to make a disclosure.* It may be said, therefore, that, in addition to a failure to disclose known facts, there must be some trick or contrivance intended to exclude suspicion and prevent inquiry, or else that there must be a legal or equitable duty resting on the party knowing such facts to disclose them.

*Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC*, 491 F.3d 522, 527–28 (6th Cir. 2007) (alteration in original) (quoting *Patten v. Standard Oil Co. of La.*, 55 S.W.2d 759, 761 (Tenn. 1933)).

Iyebote argues that Meharry had a duty to notify her of its probationary accreditation status under ACGME's policies and procedures (Doc. No. 97), which provide that "[a]ll applicants invited to interview, and residents/fellows accepted into or enrolled in a program with or sponsored by a Sponsoring Institution with Probationary Accreditation must be notified in writing of the probationary status" (Doc. No. 97-4, PageID# 1178). Iyebote has not shown that she was an applicant invited to interview, resident, or fellow at any time between January 21, 2022, when ACGME notified Meharry of its probationary accreditation status, and May 9, 2022, when the parties engaged in mediation. To the contrary, the Court found it undisputed at summary judgment that Meharry terminated Iyebote's residency effective April 29, 2019. (Doc. No. 42.) Iyebote cites a July 21, 2022 letter from Meharry's Residence Training Director notifying Iyebote "[a]s required by the [ACGME]" "in writing that our residency training program is on Probationary Accreditation status." (Doc. No. 97-2). Meharry states that it provided this notice "in furtherance of [Iyebote's] readmittance to [its] residency program" under the terms of the settlement agreement and pursuant to its duty to "residents/fellows accepted into . . . a program" (Doc. No. 98, PageID# 1187). Iyebote has offered nothing to dispute this assertion.

Meharry also provides evidence to show that it has not concealed its probationary accreditation status. Meharry offers a sworn declaration from its director of communications and marketing stating that Meharry has continuously publicized its probationary accreditation status on the website for its residency programs since February 9, 2022 (Doc. No. 98), which Iyebote does not dispute.

Finally, Iyebote has not presented any evidence or authority to support her assertion that Meharry's probationary accreditation "status makes it nearly impossible—if not impossible—for [her] to transfer into another program" and, thus, has not supported her argument that the fact of Meharry's probationary accreditation status materially alters the terms of the settlement agreement. (Doc. No. 97, PageID# 1153.) Iyebote therefore has not carried her burden to show that the settlement agreement is invalid because Meharry fraudulently concealed its probationary accreditation status from her.

Iyebote's alternative argument that Meharry failed to provide her with promised attendance records is an argument that Meharry violated the parties' settlement agreement, not that the agreement is invalid due to fraud or mutual mistake. Further, as Meharry points out, the term sheet reflects that Meharry agreed to "complete any form requested by a potential transferring institution in compliance with any attendance records of [Iyebote]." (Doc. No. 96, PageID# 1150, ¶ 3.) Iyebote has not shown that Meharry agreed to provide attendance records directly to her as part of the settlement agreement. Consequently, the Court should find that there is no genuine dispute about the terms of Meharry and Iyebote's settlement agreement and no proof of fraud, duress, or mutual mistake to render the agreement invalid.

Meharry makes a passing request for an award of attorney's fees in its briefs in support of its motion to enforce the settlement agreement. (Doc. Nos. 96, 98.) "There is no common law right

to attorney's fees. Under the 'American Rule,' the 'general practice' is not to award fees to prevailing parties 'absent explicit statutory authority.'" *McQueary v. Conway*, 614 F.3d 591, 596–97 (6th Cir. 2010) (quoting *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.* 532 U.S. 598, 602 (2001)); *see also Grinnell Bros., Inc. v. Touche Ross & Co.*, 655 F.2d 725, 726 (6th Cir. 1981) ("As a general rule, a federal court may not award attorney's fees to the prevailing party unless a statute or a binding contract authorizes such a recovery." (quoting *Baldwin v. Burger Chef Sys., Inc.*, 507 F.2d 841 (6th Cir. 1974))). Because Meharry has not identified any authority supporting a fee award and makes no argument as to why a fee award is justified in this case, the Court should deny this request.

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Meharry's motion to enforce the parties' settlement agreement (Doc. No. 95) be GRANTED and that Meharry's request for attorney's fees be DENIED WITHOUT PREJUDICE.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 22nd day of August, 2023.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge