UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| DISEIYE IYEBOTE, M.D., | ) |
| Plaintiff, | ) |
| v. | ) NO. 3:20-cv-00475 |
| MEHARRY MEDICAL COLLEGE, | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

Before the Court is the Magistrate Judge's Report and Recommendation ("R&R") (Doc. No. 102), recommending that the Court grant Meharry Medical College's ("Meharry") Motion to Enforce Settlement Agreement (Doc. No. 95) and deny Meharry's request for attorneys' fees. Dr. Diseiye Iyebote ("Iyebote") filed timely objections to the R&R. (Doc. No. 104) Pursuant to Federal Rule of Civil Procedure 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." See also 28 U.S.C. § 636(b)(1)(C). For the reasons stated below, Iyebote's objections are overruled and the Court will adopt the R&R.

I.  BACKGROUND

This case arises out of Meharry's termination of Iyebote from its psychiatric medical residency program. On May 9, 2022, after engaging in a mediation, Iyebote and Meharry executed a handwritten agreement to settle this case, under the following terms:

1. The parties have agreed to settle this case for [a redacted dollar amount] inclusive of attorney's fees and costs.

2. Plaintiff will sign a general release of claims and dismiss her pending lawsuit with prejudice.

3. Plaintiff will be reinstated for her PGY3 year in Colorado. During Plaintiff's PGY3 year, Defendant will cooperate with her in her efforts to transfer to another program for her PGY4 year. Counsel for Plaintiff and counsel for Defendant will work together in good faith to draft a mutually agreed upon letter of reference that will be attached to the final settlement agreement. Plaintiff will be listed as PGY4 at the end of her PGY3 year. Defendant will complete any form requested by a potential transferring institution in compliance with any attendance records of the Plaintiff.

4. The final settlement agreement will contain the following provisions:

    A. Confidentiality

    B. No admission of liability

    C. Non-disparagement, mutual with specific language to be finalized in the final agreement.

(Doc. No. 96-1 at 1) ("Agreement"). Both parties signed the Agreement. Several weeks later, Iyebote learned that Meharry's residency training program had been placed on probation by the Accreditation Council for Graduate Medical Education ("ACGME") and that Meharry's accreditation was in jeopardy. Iyebote then refused to enter the final settlement agreement. (Doc. No. 91). Meharry seeks to enforce the Agreement and requests attorneys' fees associated with its motion. Meharry contends that the Agreement constitutes a valid enforceable contract representing the parties' meeting of the minds on the material terms to settle their pending lawsuit. Iyebote opposes the motion because Meharry fraudulently concealed its probationary status to induce her to enter the Agreement, and because Meharry failed to provide her attendance records as agreed.

The Magistrate Judge recommends granting Meharry's motion. After finding that the Agreement contained all material terms, the Magistrate Judge further found that Iyebote failed to prove fraudulent concealment. She also determined that Iyebote's receipt of her own attendance

records was not a material term of the Agreement. Accordingly, the Magistrate Judge recommends enforcement of the Agreement because "there is no genuine dispute about the terms of Meharry and Iyebote's settlement agreement and no proof of fraud, duress, or mutual mistake to render the agreement invalid." (Id. at 10). She also recommends denying Meharry's attorneys' fee request because it is presented without support.

II.   **LEGAL DISCUSSION**

Iyebote makes three objections to the R&R: (1) Meharry engaged in fraudulent concealment when it failed to notify Iyebote that Meharry was on probationary status when it agreed to reinstate Iyebote to the residency program; (2) Iyebote provided evidence that it was "impossible" or "nearly impossible" for her to transfer to another medical school after completion of her third year; and (3) Meharry was required to provide Iyebote's attendance records directly to her. (Doc. No. 103 at 1). The Court will address each in turn.[1]

Regarding the first objection, under Tennessee law, "fraudulent concealment is committed when a party who has a duty to disclose a known fact or condition fails to do so, and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury." Chrisman v. Hill Home Dev., Inc., 978 S.W.2d 535, 538–39 (Tenn. 1998). "Although contracting parties have a duty to disclose material facts affecting the essence of a contract's subject matter, a party does not have a duty to disclose a material fact where ordinary diligence would have revealed the undisclosed fact." Soles4Souls, Inc. v. Donelson Cedarstone Assocs., LP, No. M2009-01906-

---

[1] Iyebote also argues that the Agreement should not be enforced because Meharry prematurely terminated her third year in violation of the Agreement. (Doc. No. 104 at 8–9). Because this new argument was not before the Magistrate Judge, it is waived. See Morgan v. Trierweiler, 67 F.4th 362, 367 (6th Cir. 2023) ("[I]ssues raised for [the] first time in objections to [a] magistrate judge's report and recommendation are deemed waived." (alterations in original) (internal quotation marks omitted)).

COA-R3-CV, 2010 WL 5289959, at *12 (Tenn. Ct. App. Dec. 17, 2010) (quoting Odom v. Oliver, 310 S.W.3d 344, 349–50 (Tenn. Ct. App. 2009)). When parties are represented by legal counsel and reach an agreement, proving fraudulent concealment is even more problematic. Arrington v. Bryant, No. E201802165COAR3CV, 2019 WL 6211256, at *9 (Tenn. Ct. App. Nov. 20, 2019) (fraudulent concealment claim rejected when "plaintiff voluntarily signed the settlement agreement, drafted and presented by his own attorney" and "the material facts allegedly concealed were either known or easily discoverable by plaintiff through the exercise of ordinary diligence.")

Relying on evidence some of which was not presented to the Magistrate Judge, Iyebote now argues:

> Meharry knew Dr. Iyebote's reinstatement in the residency program was of the highest importance at mediation and, as a requirement of the reinstatement, it required Dr. Iyebote to transfer out of Meharry after reinstating her and completing her PGY3. [Docket Entry 96-1]. Meharry knew that being on probationary status would make her transfer impossible. Probationary status raises questions and concerns about the competency and proficiency of the resident physician seeking transfer from an institution that has not met the minimum training standards set forth by ACGME. [Plaintiff's Exhibit 8 – Affidavit of Michelle Williams; Plaintiff's Exhibit 9 – Affidavit of Dr. William Ritchie]. Importantly, even though Dr. Iyebote was once again an accepted resident on May 9, 2022, Meharry did not give her written notice until July 21, 2022. [Docket Entry 97-2]. This is over 2 months after the mediation and 3 weeks after she filed her notice with the Court that she would not be signing the Settlement Agreement and Release. [Docket Entry 91].

(Doc. No. 104 at 4). Her new arguments are problematic for several reasons. Iyebote was terminated in April 2019 and Meharry agreed to return her as a resident effective May 9, 2022. When Meharry agreed to reinstatement, Iyebote achieved what was "of the highest importance," continuation of her residency program. Contrary to her arguments that she was "required" to transfer from Meharry after she completed her third year, there is no such mandate in the four corners of the Agreement. Like any other resident, Iyebote had the option to transfer, and Meharry

4

agreed to "cooperate" if she decided to do so. As a result, Meharry's probationary status did not affect Iyebote any differently than any other resident or if she had never been terminated.

Next, there is no evidence supporting Iyebote's belief that "Meharry knew that [its] probationary status would make her transfer impossible." (Doc. No. 104 at 4). The affidavits of Michelle Williams and Dr. William Richie do not establish that they were authorized agents of Meharry on this issue. At best, Michelle Williams and Dr. William Richie interpret the ACGME policy on transfers and seem to assume Iyebote is covered under the policy. Neither engage in the textual analysis performed by the Magistrate Judge that explains why she is excluded from the ACGME policy. Even more to the point, in this case, Iyebote obtained her residency status as of May 9, 2022 as a result of the mediation, not through the normal residency selection process of application, interview, evaluation and selection. Iyebote's reliance on when she received written notice on July 21, 2022 of Meharry's probationary status is misleading because she received that written notice due to her status as an active resident as agreed to at the mediation.

There is no dispute that prior to the mediation, since February 9, 2022, Meharry disclosed its probationary status for each of its residency programs on its website home page. So, by the time the parties mediated and entered the Agreement, this information had been publicly available to Iyebote and her counsel for three full months. Ordinary diligence on behalf of Iyebote, and certainly her counsel, would have revealed Meharry's public notice of its probationary status.

Iyebote attempts to side-step the effect of Meharry's public notice, by insisting that she is entitled to written notice per the ACGME's policies. (See Doc. No. 104 at 4). But the ACGME's policies are not material terms of the Agreement. The Agreement only requires Meharry to "cooperate with [Iyebote] in her efforts to transfer to another program for her PGY4 year," "work [with Iyebote] in good faith to draft a mutually agreed upon letter of reference," and "complete

5

any form requested by a potential transferring institution." (Doc. No. 96-1 at 1). Meharry's probationary status or compliance with ACGME policies did not affect Meharry's ability to comply with the Agreement.

Iyebote's second objection has no factual basis. She has not offered any evidence to show that her transfer from Meharry's residency program became "impossible" or "nearly impossible" due to its probationary status. Iyebote offers new evidence that was not previously presented before the Magistrate Judge.[2] Specifically, she relies on the declaration of Dr. Joshua Anthony, a former psychiatry resident at Meharry, (Doc. No. 105-7), the affidavit of Michelle Williams, a former program coordinator of Meharry's psychiatry residency, (Doc. No. 105-8), and the affidavit of Dr. William Richie, a former residency program director at Meharry. (Doc. No. 105-9). None of these individuals come close to supporting Iyebote's objections. Anthony's declaration makes no reference to Meharry's probationary status. A close reading of Ms. Williams' and Dr. Richie's affidavits reveal that they speak only on what "can" or "may" happen. (See 105-8 at 2 ("An adverse accreditation decision such as probation <u>can</u> affect a resident physician seeking transfer to another institution. . . . A resident from an institution placed on probation <u>may</u> be viewed as lacking the minimum academic and clinical skills and knowledge required for training and proficiency." (emphasis added)); 105-9 at 2 ("Residency programs on probation <u>can</u> affect a resident physician seeking transfer to another institution . . . ." (emphasis added))). This evidence comes no way close to supporting Iyebote's objection that Meharry's probationary status made it "impossible" or "nearly impossible" for her to transfer.

---

[2] Iyebote does not provide an explanation as to why her additional evidence was not presented before the Magistrate Judge. (<u>See generally</u> Doc. Nos. 104 and 105). The Court is not required to consider this additional evidence. <u>See</u> <u>Moore v. United States Dep't of Agric.</u>, No. 17-5363, 2018 WL 1612299, at *2 (6th Cir. Jan. 31, 2018). Nevertheless, as explained, the evidence does not support Iyebote's objection.

6

Iyebote's third objection, regarding her attendance records also fails. The sole issue before the Court is whether to enforce the Agreement, the terms of which are clear and unambiguous. Nowhere within the Agreement does Meharry agree to provide any records to Iyebote herself. Meharry agreed to "complete any form requested by a potential transferring institution in compliance with any attendance records of [Iyebote]." (Doc. No. 96-1 at 1). Those words simply do not give Iyebote a right to receive her attendance records. Neither do those words refer to ACGME policies.

Turning to Meharry's request for attorney's fees, the Court appreciates Meharry's frustration and that it incurred fees and costs arising from Iyebote's failure to finalize the Settlement. On this record, the Court cannot conclude that she did so "in bad faith, vexatiously, wantonly, or for oppressive reasons." Stalley v. Methodist Healthcare, 517 F.3d 911, 920 (6th Cir. 2008) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45–46 (1991)). True, Iyebote repudiated certain provisions of the Agreement while benefiting from others, (Doc. No. 106 at 2), but this is more likely than not the result of her "change of heart." (Doc. No. 96 at 7). Accordingly, the Court will deny Meharry's request for attorneys' fees.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE