IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

<u>Diseiye Iyebote, M.D.</u>,
    Plaintiff,

Case Number <u>3:20-cv-00475</u>

v.

Judge <u>Waverly D. Crenshaw, Jr.</u>

<u>Meharry Medical College</u>
    Defendant.

Magistrate Judge <u>Alistair Newbern</u>

### Motion For Reconsideration

    On March 14, 2025, Plaintiff Diseiye Iyebote, M.D. ("Plaintiff") and Defendant Meharry Medical College ("Defendant") participated in an evidentiary hearing on Plaintiff's Motion to Enforce Settlement Agreement against Defendant and Defendant's breach of contract. On March 19, 2025, the Court entered an order denying Plaintiff's motion and ordered the parties to file a notice informing the Court as to "whether payment has been completed and whether a final agreement has been executed."

    Plaintiff respectfully requests that the Court reconsider its March 19, 2025, order denying her motion to enforce due to Defendant's failure to comply with the Court's orders and new evidence that was not available during the March 14, 2025, hearing.

**A. Defendant's failure to comply with the Court's orders**

    During the hearing on March 14, 2025, the Court addressed the parties' settlement Term Sheet signed and dated on May 9, 2022. (Exhibit 1, Term Sheet). The Court upheld Item Numbers 1, 2, and 3 in the Term Sheet and denied Item Number 4 on the basis that a final agreement was not executed by the parties and Item Number 4 stated that "The final settlement agreement will contain the following provisions: (A) Confidentiality, (B) No admission of liability, (C) Non-disparagement, mutual with specific language to be finalized in the final agreement." With respect to Item Numbers 1-3, the Court ordered Defendant to make the payment specified in Item Number 1 to Plaintiff, and ordered the parties to work together in a

good faith effort to agree upon and execute a final settlement agreement and notify the Court accordingly.

Defendant has failed to adequately and timely respond in good faith to Plaintiff's efforts to negotiate and execute a final settlement agreement, despite her numerous email requests that it do so. (Exhibit 2, Emails). Additionally, Defendant is now demanding the complete removal of Item Number 3 in the Term Sheet from the final settlement agreement. Immediately following the evidentiary hearing on March 14, 2025, However, Defendant's Attorney Mark Baugh and I briefly discussed and agreed to include Item Numbers 1, 2, and 3 in the final settlement agreement. (Exhibit 3, Declaration). Defendant's current refusal to include Item Number 3, which was approved by the Court, demonstrates that Defendant is acting in bad faith and makes it impossible to execute a final settlement agreement. Item Number 3 is of paramount importance to Plaintiff and her career. Plaintiff never would have agreed to settle her claims against Defendant without Item Number 3. Defendant agreed in the signed Term Sheet to include, and therefore must include in the final settlement agreement, Item Number 3.

### B. New evidence that was not available at the March 14, 2025, hearing.

Based on a strict application of Tennessee contract law, the Court concluded at the March 14, 2025, hearing that Defendant technically did not breach a part of Item Number 3 in the Term Sheet, which states that "Plaintiff will be reinstated for her PGY3 year in Colorado." The Court found that Defendant did "reinstate" Plaintiff for her PGY3 year in Colorado, despite its terminating her three months before she could complete the requirements for PGY4 designation and transfer.

Following the hearing, Plaintiff received clinical evaluation documents created and filed by the Defendant on July 26, 2022, showing that Defendant classified her as a PGY2, and not as a PGY3, as of May 9, 2022, when the Term Sheet was signed, and also as of July 1, 2022, when she was reinstated in Colorado. Therefore, Defendant reinstated Plaintiff for her PGY2 year, and not her PGY3 year as agreed upon in the Term Sheet. (Exhibit 4, ACGME Transcript). In the Term Sheet, Defendant agreed that "Plaintiff will be listed as PGY4 at the end of her PGY3 year" and that it would "cooperate with her in her efforts to transfer to another program for her PGY4 year," among other things. This agreement presupposes, and demonstrates the parties' intent, that Plaintiff would be permitted to complete the required rotations during her

PGY3 year, and not merely be "reinstated" for part of her PGY3 year. Viewing Item Number 3 and the Term Sheet as a whole demonstrates that the parties fully intended that Plaintiff would be able to fully complete her PGY3 year such that she could gain PGY4 eligibility for transfer. Defendant has acknowledged that Plaintiff has not completed her PGY3 year, is not listed as PGY4 as agreed upon, and is therefore unable to transfer to another program as a PGY4 to complete her medical training as agreed upon. These facts completely undermine the primary purpose of the parties' settlement agreement. Plaintiff never would have signed the Term Sheet absent the provisions in Item Number 3. Defendant has materially breached Item Number 3. If Defendant now denies the parties' clear intent in Item Number 3 viewed as a whole, then the agreement contained an illusory promise and/or Defendant engaged in intentional misrepresentation of material facts by agreeing to take actions that it knew it was not going to take at the time of its agreement.

## CONCLUSION

Defendant has not satisfied its obligations as set forth in Item Number 3 of the Term Sheet. It further refuses to include Item Number 3 in the final settlement agreement even though it agreed to do so in the Term Sheet and Plaintiff never would have settled her claims against Defendant absent that agreement.

Accordingly, Plaintiff respectfully requests that the Court reconsider its ruling and enter an order requiring Defendant to include Item Number 3 in the Term Sheet in the final settlement agreement, and to fulfill each of its obligations set forth in Item Number 3 in their entirety. Plaintiff further requests that the Court order Defendant to work cooperatively with Plaintiff in good faith and in a timely manner to finalize and execute a final settlement agreement.

Respectfully Submitted,

Diseiye Iyebote, MD
Pro Se Litigant
Email: diyebote@gmail.com
703-615-6034

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of April 2025, a copy of the foregoing motion was filed with the Clerk of the Court. A service copy was sent to the Defendant attorney through the U.S. Mail (postage pre-paid) at the address below.

Mark A. Baugh, BPR No. 015779
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37203

Exhibit 1

Term Sheet

1. The parties have agreed to settle this case for ▮▮▮▮▮, inclusive of attorneys fees and costs.

2. Plaintiff will sign a general release of claims and dismiss her pending lawsuit with prejudice.

3. Plaintiff will be reinstated for her PGY3 year in Colorado. During Plaintiff's PGY3 year, Defendant will cooperate with her in her efforts to transfer to another program for her PGY4 year. Counsel for Plaintiff and Counsel for Defendant will work together in good faith to ~~review~~ draft a mutually agreed upon letter of reference that will be attached to the final settlement agreement. Plaintiff will be listed as PGY4 at the end of her PGY3 year. Defendant will complete any form requested by a potential transferring institution in compliance with any attendance records of the Plaintiff.

4. The final settlement agreement will contain the following provisions:
    A. Confidentiality
    B. No admission of liability
    C. Non-disparagement, mutual with specific language to be finalized in the final agreement.

_____ 5/9/22
Plaintiff

_____ for Meharry Medical College
05/09/22




*Exhibit 2*

**Gmail**        Diseiye Iyebote &lt;diyebote@gmail.com&gt;

## Changes - Agreement
6 messages

---

**Diseiye Iyebote** &lt;diyebote@gmail.com&gt;      Thu, Apr 3, 2025 at 9:04 AM
To: "Baugh, Mark" &lt;mbaugh@bakerdonelson.com&gt;

Hi Mark,

See attached changes. The new agreement you sent is drastically different from our initial agreement from 2022. I feel more comfortable using that agreement. I've attached a copy of the agreement that Jennifer sent to me for signature in 2024. I'll start working on the letter of reference and will send it to you on Monday. Take care.

*Kind regards,*

**Diseiye Iyebote**
703-615-6034

---

**2 attachments**

 **Untitled document.pdf**
131K

 **Meharry-Iyebote Settlement Agreement.docx**
18K

---

**Diseiye Iyebote** &lt;diyebote@gmail.com&gt;      Mon, Apr 7, 2025 at 3:03 PM
To: "Baugh, Mark" &lt;mbaugh@bakerdonelson.com&gt;

Hi Mark,

Did you get a chance to review my suggested changes? I'm waiting to hear back from you so we can finalize this settlement agreement.

*Kind regards,*

**Diseiye Iyebote**
703-615-6034

[Quoted text hidden]

**Baugh, Mark** <mbaugh@bakerdonelson.com>
To: Diseiye Iyebote <diyebote@gmail.com>

Mon, Apr 7, 2025 at 4:48 PM

We are looking at eye changes, I should have comments to you by Wednesday.

Mark A. Baugh
Shareholder, Chief Diversity and Inclusion Officer
Baker Donelson
mbaugh@bakerdonelson.com

**From:** Diseiye Iyebote <diyebote@gmail.com>
**Sent:** Monday, April 7, 2025 4:03:11 PM
**To:** Baugh, Mark <mbaugh@bakerdonelson.com>
**Subject:** Re: Changes - Agreement

[Quoted text hidden]

NOTICE: This electronic mail transmission with any attachments may constitute an attorney-client communication, protected health information (PHI) or other confidential information that is in fact confidential, legally protected from disclosure and/or protected by the attorney-client privilege. If you are the intended recipient, please maintain confidentiality and be aware that forwarding this e-mail to others may result in a waiver of these protections and privileges and regardless electronic communications may be at times illegally accessed and viewed. If you are not the intended recipient, this e-mail is not intended for transmission to you, nor to be read, reviewed, used, distributed or even received by you or any other unauthorized persons. If you have received this electronic mail transmission in error, please double delete it from your system immediately without copying, reading or disseminating it, and notify the sender by reply e-mail, so that our address record can be corrected. Thank you very much.

---

**Diseiye Iyebote** <diyebote@gmail.com>
To: "Baugh, Mark" <mbaugh@bakerdonelson.com>

Wed, Apr 9, 2025 at 7:15 PM

Hi Mark,

I did not get any feedback on the settlement agreement from you as you promised. Please send as soon as possible so we can finalize and execute.

[Quoted text hidden]

---

**Diseiye Iyebote** <diyebote@gmail.com>
To: "Baugh, Mark" <mbaugh@bakerdonelson.com>

Fri, Apr 11, 2025 at 10:28 AM

Hi Mark,

It is now Friday, you indicated that you would send the changes to me two days ago on Wednesday.
When do you plan on sending it?

[Quoted text hidden]

*Exhibit 3*

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF TENNESSEE

Diseiye Iyebote, M.D.,
    Plaintiff(s),

Case Number 3:20-cv-00475

v.

Judge Waverly D. Crenshaw, Jr.

Meharry Medical College
    Defendant(s).

Magistrate Judge Alistair Newbern

### Declaration Of Diseiye Iyebote, MD

I am the plaintiff in this case and have personal knowledge of the facts stated below. I am over the age of eighteen (18) and can testify competently about the contents of this declaration.

Immediately after the evidentiary hearing on March 14, 2025, while still in Judge Waverly Crenshaw's chambers, Defendant's Attorney Mark Baugh and I briefly discussed and agreed to include Item Numbers 1, 2, and 3 in the final settlement agreement that he intended to email me. On April 14th, 2025, Defendant's Attorney Mr. Mark Baugh demanded removing Item Number 3 in its entirety from the final settlement agreement stating "we cannot agree with any of these". The refusal to honor the agreed-upon term makes it impossible to execute a final settlement agreement.

Based on the above, I respectfully request that the court take this declaration into consideration when evaluating the matters at hand in this case.

*I declare under penalty of perjury pursuant to 28 U.S.§ 1746 that the foregoing declaration is true and correct.*

Executed on this 16th day of April, 2025.

Signature
Diseiye Iyebote, MD

Exhibit 4

# All Evaluations



**Meharry Medical College - Psychiatry**
Resident Year In Program: 2
Report Date Range: All Dates
Rotation Name: All Rotations
Attending: **Dr. Saleh Ahmad**

Report Date/Time: 7/26/2022 12:36:19 PM

Evaluation Name: **Resident Evaluation of Faculty-New**
Evaluator: Dr. Diseiye Iyebote
Evaluatee: Dr. Saleh Ahmad
Evaluation Completed: 01/15/2019
Rotation Name: Geriatric
Evaluation Period: 11/01/2018 through 11/30/2018

### Medical Knowledge

| Question | SAhmad24 |
|---|---|
| Demonstrated broad knowledge of medicine. | 3.00 |
| Was up-to-date. | 3.00 |
| Used relevant medical/scientific literature in supporting clinical advice. | 3.00 |
| Identified important elements in case analysis. | 3.00 |
| Discussed pertinent aspects of population and evidence-based medicine. | 3.00 |

### Patient Care and Procedural Skills

| Question | SAhmad24 |
|---|---|
| Placed the patient's interests first. | 3.00 |
| Displayed sensitive, caring, respectful attitude toward patients. | 3.00 |

### Practice-Based Learning and Improvement

| Question | SAhmad24 |
|---|---|
| Explicitly encouraged further learning. | 3.00 |
| Motivated residents to self-learn. | 3.00 |
| Evaluated resident's ability to analyze or synthesize knowledge. | 3.00 |

### Professionalism

| Question | SAhmad24 |
|---|---|
| Established rapport with team members. | 3.00 |
| Showed respect for residents. | 3.00 |
| Served as a role model. | 3.00 |
| Was enthusiastic and stimulating. | 3.00 |
| Demonstrated gender sensitivity. | 3.00 |
| Recognized own limitations; was appropriately self-critical. | 3.00 |
| Encouraged housestaff to bring up problems. | 3.00 |

### System-Based Practices

| Question | SAhmad24 |
|---|---|
| Reviewed expectations of each team member at beginning of rotation. | 3.00 |
| Provided useful feedback including constructive criticism to team members. | 3.00 |
| Balanced service responsibilities and teaching functions. | 3.00 |

### Attendance & Availability

| Question | SAhmad24 |
|---|---|
| Promptness: Was usually prompt | 3.00 |
| Rounds Schedule: Adhered to rounds schedule | 3.00 |
| Interruptions: Kept interruptions (beepers & personal) to a minimum. | 3.00 |
| Time on Rounds: Spent enough time on rounds; appeared unhurried. | 3.00 |
| Encouraged active housestaff participation. | 3.00 |

### Competence

| Question | SAhmad24 |
|---|---|
| Would you recommend that this faculty member continue to serve as an attending physician for the training program? (5) Yes (1) No | Yes |
| To further enhance professional development would you recommend that this faculty member receive formal training in teaching and faculty education? (1) Yes, I recommend formal training (5) No, I do not recomment formal training | No |

### Teaching Skills

| | |
|---|---|
| Motivated residents to self-learn. | 4.00 |
| Evaluated resident's ability to analyze or synthesize knowledge. | 4.00 |

### Professionalism

| Question | DCarnahan1 |
|---|---|
| Established rapport with team members. | 3.00 |
| Showed respect for residents. | 4.00 |
| Served as a role model. | 4.00 |
| Was enthusiastic and stimulating. | 4.00 |
| Demonstrated gender sensitivity. | 4.00 |
| Recognized own limitations; was appropriately self-critical. | 4.00 |
| Encouraged housestaff to bring up problems. | 3.00 |

### System-Based Practices

| Question | DCarnahan1 |
|---|---|
| Reviewed expectations of each team member at beginning of rotation. | 4.00 |
| Provided useful feedback including constructive criticism to team members. | 4.00 |
| Balanced service responsibilities and teaching functions. | 4.00 |

### Attendance & Availability

| Question | DCarnahan1 |
|---|---|
| Promptness: Was usually prompt | 4.00 |
| Rounds Schedule: Adhered to rounds schedule | 4.00 |
| Interruptions: Kept interruptions (beepers & personal) to a minimum. | 4.00 |
| Time on Rounds: Spent enough time on rounds; appeared unhurried. | 4.00 |
| Encouraged active housestaff participation. | 4.00 |

### Competence

| Question | DCarnahan1 |
|---|---|
| Would you recommend that this faculty member continue to serve as an attending physician for the training program?<br>(5) Yes | Yes |

| | |
|---|---|
| (1) No | |
| To further enhance professional development would you recommend that this faculty member receive formal training in teaching and faculty education?<br>(1) Yes, I recommend formal training<br>(5) No, I do not recomment formal training | Yes |

### Teaching Skills

| Question | DCarnahan1 |
|---|---|
| Stated goals clearly and concisely. | 3.00 |
| Kept discussions focused on case or topic. | 3.00 |
| Asked questions in non-threatening way. | 3.00 |
| Used bedside teaching to demonstrate history-taking and physical skills. | 3.00 |
| Emphasized problem-solving, (thought processes leading to decisions). | 3.00 |
| Integrated social/ethical aspects of medicine. | 3.00 |
| Stimulated team members to read, research, review pertinent topics. | 4.00 |
| Accommodated teaching to actively incorporate all members of team. | 4.00 |
| Provided special help as needed to team members. | 4.00 |

### Comments

| | |
|---|---|
| Evaluation Comments | Always available and helpful with patient care.. *Signed - Dr. Diseiye Iyebote (Proxy: Sharon Glover)* |
| Attending Acknowledgement | Evaluation Submitted without the Attending's Review - Comments Not Applicable |
| Evaluator Acknowledgement | Comments Not Available |
| Program Director Comments | *Filed by Dr. Lloyda Williamson, 6/5/2018 7:13:21 PM* |

Evaluation Name: **Resident Evaluation of Faculty-Anonymous**
Evaluation Completed: **04/02/2018**
Evaluation Period: **12/31/2017 through 12/31/2017**
Evaluator: **Dr. Diseiye Iyebote (Proxy: Leland Dugger)**
Evaluatee: **Dr. David Carnahan**
Rotation Name: **Inpatient (York)**

### Medical Knowledge

| Question | DCarnahan1 |
|---|---|
| Demonstrated broad knowledge of medicine. | 4.00 |

| | |
|---|---|
| Was up-to-date. | 4.00 |
| Used relevant medical/scientific literature in supporting clinical advice. | 4.00 |
| Identified important elements in case analysis. | 4.00 |
| Discussed pertinent aspects of population and evidence-based medicine. | 4.00 |

**Patient Care and Procedural Skills**

| Question | DCarnahan1 |
|---|---|
| Placed the patient's interests first. | 4.00 |
| Displayed sensitive, caring, respectful attitude toward patients. | 4.00 |

**Practice-Based Learning and Improvement**

| Question | DCarnahan1 |
|---|---|
| Explicitly encouraged further learning. | 4.00 |
| Motivated residents to self-learn. | 4.00 |
| Evaluated resident's ability to analyze or synthesize knowledge. | 4.00 |

**Professionalism**

| Question | DCarnahan1 |
|---|---|
| Established rapport with team members. | 3.00 |
| Showed respect for residents. | 4.00 |
| Served as a role model. | 4.00 |
| Was enthusiastic and stimulating. | 4.00 |
| Demonstrated gender sensitivity. | 4.00 |
| Recognized own limitations; was appropriately self-critical. | 4.00 |
| Encouraged housestaff to bring up problems. | 3.00 |

**System-Based Practices**

| Question | DCarnahan1 |
|---|---|
| Reviewed expectations of each team member at beginning of rotation. | 4.00 |
| Provided useful feedback including constructive criticism to team members. | 4.00 |

| | |
|---|---|
| Balanced service responsibilities and teaching functions. | 4.00 |

**Attendance & Availability**

| Question | DCarnahan1 |
|---|---|
| Promptness: Was usually prompt | 4.00 |
| Rounds Schedule: Adhered to rounds schedule | 4.00 |
| Interruptions: Kept interruptions (beepers & personal) to a minimum. | 4.00 |
| Time on Rounds: Spent enough time on rounds; appeared unhurried. | 4.00 |
| Encouraged active housestaff participation. | 4.00 |

**Competence**

| Question | DCarnahan1 |
|---|---|
| Would you recommend that this faculty member continue to serve as an attending physician for the training program?<br>(5) Yes<br>(1) No | Yes |
| To further enhance professional development would you recommend that this faculty member receive formal training in teaching and faculty education?<br>(1) Yes, I recommend formal training<br>(5) No, I do not recomment formal training | Yes |

**Teaching Skills**

| Question | DCarnahan1 |
|---|---|
| Stated goals clearly and concisely. | 3.00 |
| Kept discussions focused on case or topic. | 3.00 |
| Asked questions in non-threatening way. | 3.00 |
| Used bedside teaching to demonstrate history-taking and physical skills. | 3.00 |
| Emphasized problem-solving, (thought processes leading to decisions). | 3.00 |
| Integrated social/ethical aspects of medicine. | 3.00 |
| Stimulated team members to read, research, review pertinent topics. | 4.00 |
| Accommodated teaching to actively incorporate all members of team. | 4.00 |
| Provided special help as needed to team members. | 4.00 |

**Comments**

| Evaluation Comments | PATIENT CARE & PROFESSIONALISM:<br>Always available and helpful with patient care. |
|---|---|

|  | . Signed - Dr. Diseiye Iyebote (Proxy: Leland Dugger) |
|---|---|
| Attending Acknowledgement | Evaluation Submitted without the Attending's Review - Comments Not Applicable |
| Evaluator Acknowledgement | Comments Not Available |
| Program Director Comments | Filed by Dr. Lloyda Williamson, 6/5/2018 7:13:14 PM |

**Report Date Range:** All Dates
**Rotation Name:** All Rotations
**Attending: Dr. Jason Cheng**

Report Date/Time: 7/26/2022 12:36:25 PM